UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASPER MARTIN,

                         Petitioner,                       13 Civ. 2413 (VB) (PED)

       - against -

**REPORT AND**
**RECOMMENDATION**

ADA PEREZ,

                        Respondent.

**TO:    THE HONORABLE VINCENT BRICCETTI**
**UNITED STATES DISTRICT JUDGE**

# I. INTRODUCTION

On May 13, 2009, a Sullivan County jury convicted Petitioner Jasper Martin ("Petitioner" or "Defendant") of Conspiracy in the Second Degree in violation of N.Y. Penal L. § 105.15, as well as seven (7) substantive narcotics possession charges. On September 17, 2009, the court (LaBuda, J.) sentenced Petitioner to 12 ½ to 25 years on the conspiracy conviction to run *consecutive* to determinate terms amounting to 25 years on the substantive counts. On February 24, 2011 the Appellate Division reversed and dismissed the possession convictions but affirmed the conspiracy conviction. People v. Martin, 81 A.D.3d 1178 (3d Dep't 2011). Accordingly, Petitioner is serving the 12 ½ to 25 year term and is confined at Downstate Correctional Facility, Fishkill, New York.

Before the Court is Petitioner's *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This petition is before me pursuant to an Order of Reference dated June 19, 2013. (Dkt. 12). For the reasons set forth below, I respectfully recommend that Your Honor deny the petition in its entirety.

## II. BACKGROUND[1]

### A.    Evidence Adduced at Trial

Petitioner's arrest and conviction arose from a multi-year investigation by the Mid-Hudson Drug Task Force and the Monticello Police Department concerning the drug activities of one Adam Bloom ("Bloom").  (T. 273).[2]  The police used informants and eavesdropping warrants to determine how Bloom transported cocaine to Sullivan County and to identify Bloom's confederates.  (T. 282-83, 329).  The investigation culminated in a 52-count indictment charging 13 defendants.  Trial against Petitioner alone commenced on May 13, 2009.

At trial, New York State Police Investigator William Young described how he listened to thousands of Bloom's telephone conversations, nearly all of which related to narcotics activity.  (T. 300, 308).  After analyzing Bloom's telephone conversations and text messages, Young identified approximately 160  communications between Petitioner and Bloom, a number of which related to narcotics activity.  (T. 321-24).  Selected recordings were played for the jury.

Efstratios[3] Nikolados, who began selling cocaine for Bloom in March of 2008, also testified at Petitioner's trial.  (T. 188-89).  Nikolados testified that, during the course of the conspiracy, Bloom explained how his operation was run, introduced Nikolados to Petitioner, and

---

[1]  Unless otherwise indicated, the information within this section is gleaned from the instant petition (Dkt. 1), Petitioner's Memorandum of Law in Support (Dkt. 2), Respondent's Declaration in Opposition and Exhibits, (Dkt. 16) ("Resp. Decl."), Respondent's Memorandum of Law (Dkt. 17) ("Resp. Opp.") and Petitioner's Reply (Dkt. 18).

[2]  Numbers preceded by the letter "T." refer to the trial transcript.  Note that the transcripts filed with Respondent's Answer are incomplete.  (Dkt. 16.8-16.14).  Missing pages were provided and appear, somewhat haphazardly, at Dkt. 19-21.

[3]  Though Mr. Nikolados was introduced as Steven at trial, he stated his name as "Efstratios" for the record.  (T. 183-84).

identified Petitioner as a confederate who sold cocaine on behalf of the enterprise.  (T. 191-95, 219-21, 262).

In May 2008, after police observed a 31 ounce cocaine sale orchestrated by Bloom at the Woodbury Commons Mall, Nikolados and Petitioner were arrested.  (T. 173-89, 382-83). At the time of his arrest, Petitioner had in his possession $5,361.81 in denominations consistent with cocaine trafficking. (T. 431-35).

**B.**   **Direct Appeal**

Petitioner (by and through his appellate counsel, Michael G. Paul), timely appealed his conviction to the Appellate Division, Third Department on the following grounds: (1) he was denied his constitutional and statutory rights to a speedy trial; (2) the trial court erred in not suppressing the wiretaps for an alleged failure to comply with C.P.L § 700.50(2); (3) the trial court erred in not granting Petitioner's motion to set aside the verdict based on: (a) an alleged failure to link Petitioner to the crimes charged; and (b) prosecutorial misconduct in opening and closing arguments; and (4) his sentence was excessive.  (Dkt. 16.1-16.3).

By Decision and Order dated February 24, 2011 the Third Department modified Petitioner's judgment by reversing Petitioner's convictions on the possession counts and dismissing those counts, but affirming the judgment with respect to the conspiracy count. People v. Martin, 81 A.D.3d 1178 (3d Dep't 2011).  The Appellate Division specifically held: (1) Petitioner failed to preserve for appellate review his constitutional speedy trial claim because he never made such a challenge in County Court; (2) Petitioner "abandoned his statutory speedy trial claim by not objecting to the action proceeding to trial before County Court ruled on that application;" (3) Petitioner failed to preserve his claim that the evidence was insufficient to support his conspiracy conviction; (4) the evidence was legally insufficient to support

3

Petitioner's convictions for third-degree criminal possession of a controlled substance; (5) the County Court properly denied the motion to suppress certain tape recordings obtained pursuant to eavesdropping warrants; (6) Petitioner only partially preserved his claim that statements that the prosecutor made during opening and closing statements denied Petitioner a fair trial, and the preserved claim involved a statement that was not so egregious or prejudicial as to deny Petitioner a fair trial; and (7) Petitioner's sentence was not harsh and excessive.  Id.

Petitioner filed a *pro se* motion for reargument (Dkt. 16.6 at 8-13), which the Appellate Division denied by Decision and Order dated May 13, 2011.  (Id. at 21).  Petitioner, by and through counsel, timely submitted an application for leave to appeal to the New York Court of Appeals, wherein he argued the claims on which he did not prevail in the Appellate Division. (Dkt. 16.6 at 23-25).  Appellate counsel attached copies of the briefs filed in the Appellate Division to his leave letter.  (Id.).  Petitioner additionally timely submitted a *pro se* application for leave to appeal to the New York Court of Appeals, in which he raised a statutory speedy trial violation.  (Id. at 28-33).  The Court of Appeals denied leave to appeal on August 5, 2011. People v. Martin, 17 N.Y.3d 819 (2011).  Petitioner filed a *pro se* motion for reconsideration on August 24, 2011, (Dkt. 16.6 at 41-47), which the Court of Appeals denied on October 20, 2011. People v. Martin, 17 N.Y.3d 904 (2011).

C.    **The State Court Collateral Proceedings**

On September 14, 2011, Petitioner filed a *pro se* § 440.10 motion, wherein he argued: (1) the County Court improperly denied him a speedy trial hearing and erroneously failed to dismiss the indictment on speedy trial grounds; (2) there was legally insufficient evidence to support Petitioner's conspiracy conviction; and (3) Petitioner's trial counsel was ineffective because she did not: a) object to Nikolados' hearsay testimony that Bloom told him that Petitioner worked for

him; b) object to Young's hearsay testimony concerning Bloom's post-arrest statement to Young; c) offer Adam Bloom's signed statement dated March 20, 2009; and d) object to the introduction of the money seized from Petitioner at the time of his arrest. (Dkt. 16.6 at 54-109). Petitioner's § 440.10 motion was denied on February 22, 2012. (Id. at 118-119). Petitioner additionally timely submitted a *pro se* application for leave to appeal to the New York Court of Appeals on March 18, 2012. (Id. at 121-28). The Court of Appeals denied leave to appeal on April 26, 2012. (Id. at 143).

**D.     *Error Coram Nobis* Petition**

Petitioner filed a *pro se* motion for a writ of *error coram nobis* on August 22, 2012, in which he claimed that his appellate counsel was ineffective because he did not: (1) assert a weight of the evidence claim with respect to the conspiracy count; (2) assert that trial counsel was ineffective for several reasons; and (3) seek reargument after the Appellate Division denied Petitioner's legal sufficiency claim concerning the conspiracy count. (Dkt. 16.7 at 2-77). The Appellate Division denied Petitioner's motion on October 9, 2012. (Id. at 101). Petitioner applied for leave to appeal on October 22, 2012, (Id. at 103-05), which the Court of Appeals denied on January 17, 2013. (Id. at 115). Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.

**E.     The Instant Petition**

Petitioner timely[4] filed the instant Petition for a Writ of Habeas Corpus on or about April 4, 2013, wherein he seeks habeas review regarding legal sufficiency, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel.

---

[4]     See 28 U.S.C. § 2244(d)(1).

## III. <u>DISCUSSION</u>

**A.**      <u>**Applicable Law**</u>

"Habeas review is an extraordinary remedy." <u>Bousley v. United States</u>, 523 U.S. 614,

621 (1998) (<u>citing</u> <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a habeas corpus action, the court must first

determine whether the Petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the Petitioner's claim(s) in

accordance with  § 2254(d).  The procedural and substantive standards applicable to habeas

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), are summarized below.

*1. Timeliness*

The AEDPA established a one-year statute of limitations for the filing of a habeas corpus

petition seeking relief from a state court conviction.  <u>See</u> 28 U.S.C. § 2244(d)(1).  The one-year

limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or
> the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in
> violation of the Constitution or laws of the United States is removed, if the applicant was
> prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the
> Supreme Court, if the right has been newly recognized by the Supreme Court and made
> retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have
> been discovered through the exercise of due diligence.

<u>Id.</u>

The AEDPA's statute of limitations is tolled during the pendency of a properly filed

6

application for state post-conviction relief, or other collateral review, of a claim raised in the petition.  See id. § 2244(d)(2).  The one-year limitation period is also subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation marks omitted), which have "prevented [the Petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the Petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."  Id.

 2. *Exhaustion*

A federal court may not grant habeas relief unless the Petitioner has first exhausted his claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the Petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

7

under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claims. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the Petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the Petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). To this end, the Second Circuit has delineated a number of ways in which a petitioner may fairly apprise the state court of the constitutional nature of his claim, including: "a) reliance on pertinent federal cases employing constitutional analysis, b) reliance on state cases employing constitutional analysis in like fact situations, c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." See Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).

A habeas Petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451

(2000).  However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.  See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the Petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless."  Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.  *Procedural Default*

Federal habeas corpus review of a state court's denial of a state prisoner's federal constitutional claim is barred if the state court's decision rests on an independent and adequate state procedural ground, unless the Petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional violation, or show "that failure to consider the claims will result in a fundamental miscarriage of justice."  See Coleman v.

Thompson, 501 U.S. 722, 750 (1991).  See also Lee v. Kemna, 534 U.S. 362, 375 (2002);

Dunham v. Travis, 313 F.3d 724, 729 (2d Cir. 2002).  A procedural ground is "independent" if

"the last state court rendering a judgment in the case clearly and expressly states that its

judgment rests on a state procedural bar."  See Harris, 489 U.S. at 263 (internal quotation marks

omitted).  A procedural bar is "adequate" if it is "based on a rule that is firmly established and

regularly followed by the state in question."  Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir.

2006) (internal quotation and citation omitted).

　　　In certain limited circumstances, however, "even firmly established and regularly

followed state rules will not foreclose review of a federal claim if the application of the rule in a

particular case is 'exorbitant.'"  See Garvey v. Duncan, 485 F.3d 709, 713-14 (2d Cir. 2007)

(citing Lee, 534 U.S. at 376).  To this end, the Second Circuit has set forth the following

"guideposts" for evaluating the adequacy of the state procedural bar in the context of "the

specific circumstances presented in the case, an inquiry that includes an evaluation of the

asserted state interest in applying the procedural rule in such circumstances":

> (1) whether the alleged procedural violation was actually relied on in the trial
> court, and whether perfect compliance with the state rule would have changed the
> trial court's decision; (2) whether state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> Petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, therefore, whether demanding perfect compliance with the rule would serve
> a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 381-85).

### 4.  Standard of Review

　　　"[I]t is not the province of a federal habeas court to reexamine state-court determinations

on state-law questions.  In conducting habeas review, a federal court is limited to deciding

whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v.

McGuire, 502 U.S. 62, 68 (1991).  See 28 U.S.C. § 2254(a).  When reviewing petitions filed subsequent to the AEDPA's effective date, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the Petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." Williams v. Taylor, 529 U.S. 362, 405 (2000).  As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.  However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted).  In other words, "[a]s a

condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct. See 28 U.S.C. §2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The Petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. §2254(e)(1).

## B.    **Sufficiency of Evidence Claim**[5]

### 1.  *Petitioner's Sufficiency Claim Was Not Procedurally Defaulted*

Petitioner claims that the evidence was insufficient as a matter of law to support his conspiracy conviction. Petitioner presented this argument to the Third Department in Point III of his brief on direct appeal. (Dkt. 16.1 at 25-31). The Third Department affirmed Petitioner's judgment of conviction regarding the conspiracy conviction and stated:

> As for the other issues raised in this appeal, defendant initially argues that the evidence submitted at trial was legally insufficient to support any of the charges for which he now stands convicted. Initially, we note that his challenge to his conspiracy in the second degree conviction is unpreserved and we decline to exercise our interest of justice jurisdiction (see People v. Shutter, 72 AD3d 1211, 1213 (2010), lv denied 14 NY3d 892 (2010); People v. Adamek, 69 AD3d 979, 980 (2010) lv denied 14 NY3d 797 (2010)).

People v. Martin, 81 A.D.3d 1178, 1179, 917 N.Y.S. 2d 415, 417 (2011). On the basis of that ruling, Respondent argues that Petitioner's sufficiency claim is procedurally barred. (Dkt. 17 at 19 *et seq.*). I disagree.

---

[5] For organizational reasons, I have re-ordered Petitioner's claims.

At the end of the prosecution's case, Petitioner moved for a trial order of dismissal for failure to present a *prima facie* case. The pertinent exchange was as follows:

> THE COURT: And you have your trial order of motion to dismiss for lack of a prescribing *prima facia* [*sic*] case?
>
> MS. LASHER: Yes.
>
> THE COURT: Tell me why.
>
> MS. LASHER: All of the testimony that was elicited in this courtroom revolves around Adam Bloom, what Adam Bloom did, what Jerry Hernandez did. *There is no actual evidence tying Mr. Martin to Mr. Bloom or anyone else.* It's all subject to interpretation of Mr. Young who was not qualified as an expert witness on any of this. As to 39 through, I think it's 46, I'm not sure. There is absolutely no testimony, whatsoever, that places any of those drugs in Mr. Martin's hands. *There is no testimony placing Mr. Martin with Mr. Bloom in any kind of a business capacity. That would make him a co-conspirator.*

(T. 565) (emphasis added).

New York's contemporaneous objection rule, codified at Crim. P. Law § 470.05(2),[6] "provides that, with a few exceptions . . . New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." Downs v. Lape, 657 F.3d 97, 103 (2d Cir. 2011). More specifically, in order to preserve his insufficient evidence claim, Petitioner was required to make a motion to dismiss at the close of the prosecution's case. See Osbourne v. Heath, No. 12-CV-1138 (JFB), 2015 WL 1548947, at *8 (E.D.N.Y. Apr. 8, 2015). In New York, a general motion to dismiss is not sufficient to preserve an issue as a matter of law. Id. (citing People v.

---

[6] CPL 470.05(2) states, in relevant part: "For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. . . ."

Hawkins, 11 N.Y.3d at 491).  See also Richardson v. Greene, 497 F.3d 212, 218 (2d Cir. 2007)

("New York's highest courts uniformly instruct that to preserve a particular issue for appeal,

defendant must *specifically* focus on the alleged error.") (citation omitted; emphasis added in

Richardson).

On direct appeal, the Appellate Division invoked the contemporaneous objection rule as

a basis for its decision.  See People v. Smith, 66 A.D.3d 1223, 1225 (2009), lv denied 14 NY3d

773 (2010).  The Second Circuit has consistently recognized New York's contemporaneous

objection rule as an independent and adequate state procedural rule barring habeas review.  See,

e.g., Whitley v. Ercole, 642 F.3d 278, 292 (2d Cir. 2011); Brown v. Ercole, 353 Fed. App'x 518,

520 (2d Cir. 2009); Richardson, 497 F.3d at 218; Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999)

(Federal courts "have observed and deferred to New York's consistent application of its

contemporaneous objection rules.").

Before enforcing a procedural bar, however, this Court must apply the *Cotto*

"guideposts," Cotto, 331 F.3d at 240, in order to determine whether the state court's application

of its own procedural rule was so 'exorbitant' as to render it inadequate to preclude habeas

review of the federal claim.  See Whitley, 642 F.3d at 287-88.  The Second Circuit has cautioned

that "the *Cotto* factors are not a three-prong test: they are guideposts to aid inquiry; so there is no

need to force square pegs into round holes."  Clark v. Perez, 510 F.3d 382, 391 (2d Cir. 2008)

(internal citation omitted).

Here, *Cotto* considerations compel the conclusion that the appellate court erred in

denying Petitioner's sufficiency claim on procedural grounds, because Petitioner's counsel did in

fact move to dismiss on sufficiency grounds at the conclusion of the prosecution's case.  At the

very least, Petitioner "substantially complied" with the contemporaneous objection rule given

"the realities of trial," so demanding more perfect compliance with the rule would not serve any legitimate governmental interest.  Trial counsel specifically stated that there was "no testimony . . . that would make [Petitioner] a co-conspirator" in response to the trial court's question about why counsel was seeking dismissal.  It is clear from this dialogue that the motion to dismiss was specifically directed at the alleged error.  It is unclear what more trial counsel could reasonably have done, given the realities of trial, to "appreciably aid[] the trial court in assessing the nature or merits of [the] claim."  Ojar v. Greene, No. 07-CV-3674 (JG), 2008 WL 428014, at *9 (E.D.N.Y. Feb. 15, 2008) (finding procedural bar to be inadequate to sustain a state court's judgment).  See also Clarke v. Goord, No. 07-CV-366 (BMC), 2007 WL 2324965, at *2 (E.D.N.Y. Aug.10, 2007) (state court's misapplication of procedural bar deemed inadequate to preclude habeas review); Battee v. Phillips, No. 1:04-CV-04334 (ENV), 2010 WL 2026443, at *9 (E.D.N.Y. May 20, 2010) (same); Beauchamp v. Perez, No. 13 Civ. 2452 (AKH), 2014 WL 2767208 at *4 (S.D.N.Y. Apr. 30, 2014) (same); Caston v. Costello, 74 F. Supp. 2d 262, 268 (E.D.N.Y. 1999) (same).  Petitioner's sufficiency claim is not procedurally defaulted.

### 2. There was Sufficient Evidence to Convict Petitioner of the Conspiracy Charge

Having determined that Petitioner's sufficiency claim is not procedurally barred, the Court must analyze Petitioner's claim on the merits and determine whether there was sufficient evidence to convict Petitioner of the conspiracy charge.  In considering the sufficiency of the evidence in support of a state conviction, a federal habeas court looks to state law to determine the elements of the crime.  Ennis v. Artus, No. 09 Civ. 10157 (DAB), 2011 WL 3585954, at *20 (S.D.N.Y. Aug. 12, 2011).  Under New York law, "[a] person is guilty of conspiracy in the second degree when, with intent that conduct constituting a class A felony be performed, he agrees with one or more persons to engage in or cause the performance of such conduct."  N.Y.

Penal Law § 105.15.  New York law also provides that a person shall not be convicted of conspiracy unless an overt act is alleged and proved to have been committed by one of the conspirators in furtherance of the conspiracy." Id. § 105.20.

In order to convict a defendant of a conspiracy charge, the prosecution is required to prove all elements beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 315 (1979). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must not be simply whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 318-19 (emphasis in original) (internal citation omitted).  "The critical inquiry in each case is whether the evidence in its totality suffices to permit a jury to find beyond a reasonable doubt that the defendant was not merely a buyer or seller of narcotics, but rather that the defendant knowingly and intentionally participated in the narcotics-distribution conspiracy by agreeing to accomplish its illegal objective beyond the mere purchase or sale." United States v. Hawkins, 547 F.3d 66, 73-74 (2d Cir. 2008).  "[I]n cases of conspiracy, deference to the jury's findings is especially important . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel."  Ennis, 2011 WL 3585954 at *20.

Here, Nikolados testified at Petitioner's trial that Bloom briefed him concerning "how the operation was run," meaning "how he got his drugs, who he would buy his drugs from . . . who

16

would bring them . . . and who was selling around Sullivan County." Specifically, Nikolados testified that Bloom told him that Petitioner worked for Bloom by selling cocaine. (T. 220-21). Nikolados also testified that Bloom trafficked cocaine from New York City to upstate sellers, identified Bloom's supplier and transporter, described how he helped Bloom deliver cocaine and repackage it after adding a cutting agent, and explained how the operation used cell phones and code names to avoid detection. (T. 203-09). The jury also heard intercepted telephone conversations between Bloom and Petitioner which corroborated Nikolados' testimony. In this case, a rational jury could have found Petitioner guilty of conspiracy based on the testimony of Nikolados.

Additionally, a rational jury could have found Petitioner guilty of conspiracy based on Investigator Young's testimony and the wiretap evidence presented at trial. As the Appellate Division observed in the course of overturning Petitioner's convictions of the substantive possession counts, "tape recordings . . . in which defendant is heard discussing with other coconspirators the distribution of cocaine . . . may provide a legally sufficient basis for defendant's conviction for conspiracy[.]" People v. Martin, 81 A.D.3d at 1179 (citing People v. Harris, 288 A.D.2d 610, 617-18 (3d Dept. 2001)). Providing context for the recordings, Investigator Young described the phone intercepts, interpreted the code words used for drugs and money, and identified Petitioner's voice in conversation with Bloom about narcotics dealing. (T. 295-314, 459). Moreover, on cross-examination, Young testified that when Bloom was arrested, Bloom told Young that Petitioner was one of his customers. (T. 463).

Thus, there was sufficient evidence to convict Petitioner of conspiracy. See Contreras v. Smith, No. 07 Civ. 5532 (DAB) (HBP), 2011 WL 4402758, at *19 (S.D.N.Y. Jan. 5, 2011) report and recommendation adopted, No. 07 Civ. 5532 (RO), 2011 WL 4424460 (S.D.N.Y. Sept.

22, 2011) (evidence sufficient where officers monitored communications for several months and decoded conversations in which petitioner and his associates arranged illegal narcotics transactions); Diaz v. Smith, No. 04 Civ. 1337 (NRB), 2007 WL 946196, at *7 (S.D.N.Y. Mar. 27, 2007) (coconspirator testimony and police surveillance evidence sufficient).

**C.**     **Ineffective Assistance of Appellate Counsel Claims**

"In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), a habeas Petitioner must satisfy a two-part test.  First, he must show that his attorney's performance 'fell below an objective standard of reasonableness,' and second, he must show that there is a 'reasonable probability' that but for counsel's error, the outcome would have been different." Lee v. Ricks, 388 F.Supp.2d 141, 151 (W.D.N.Y.2005) (internal citations omitted). Furthermore, "[t]he issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate."  Id.  Under this rigorous test, appellate counsel need not present every non-frivolous argument that could be made on Petitioner's behalf.  See Evitts v. Lucey, 469 U.S. 387, 394 (1985) (noting that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant").  Thus, for example, omission of insignificant claims that will likely be unsuccessful does not prejudice a defendant.  See Mayo v. Henderson, 13 F.3d 528, 534 (2d Cir. 1994) ("To establish prejudice in the appellate context, a petitioner must demonstrate that 'there was a "reasonable probability" that [his] claim would have been successful . . . .'") (quoting Claudio v. Scully, 982 F.2d 798, 803 (2d Cir.1992)).  However, a habeas petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing arguments that were patently and significantly weaker.  See Mayo, 13 F.3d at 533.  But,

18

reviewing courts should not employ hindsight to second-guess an appellate attorney's choices concerning strategy.  See Jones v. Barnes, 463 U.S. 745, 754 (1983) ("For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the [ ] goal of vigorous and effective advocacy . . . .").

Here, appellate counsel raised five claims on appeal: (1) the trial court erred in its failure to dismiss the indictment on speedy trial grounds; (2) the trial court erred in its failure to suppress the physical evidence used against the appellate at trial, i.e. the electronic surveillance/wiretaps; (3) the trial court erred in not granting appellant's motion to set aside the verdict on sufficiency grounds; (4) the trial court erred in not granting Petitioner's motion to set aside the verdict because of prosecutorial misconduct in opening and closing statements; and (5) Petitioner's sentence was excessive.  (Dkt. 16.1).  The appeal achieved substantial results, as the appellate court reversed Petitioner's seven substantive possession convictions, effectively reducing Petitioner's sentence by twenty-five (25) years.  Martin, 81 A.D.3d at 1180-81.

Petitioner argues that his appellate counsel was ineffective because appellate counsel failed to: (1) raise a weight of the evidence claim; (2) assert that trial counsel was ineffective; and (3) seek reargument after the Appellate Division found Petitioner's legal sufficiency claim concerning the conspiracy count to be unpreserved.  These claims were exhausted by way of Petitioner's motion for a writ of error coram nobis, which the Appellate Division rejected on October 9, 2012.  As explained below, Petitioner's individual claims of ineffective assistance of appellate counsel are without merit.  Accordingly, the Appellate Division reasonably concluded that appellate counsel was not ineffective for omitting these meritless claims, and its rejection of Petitioner's claims that he was deprived of the right to the effective assistance of appellate

counsel was neither contrary to, nor involved an unreasonable application of, <u>Strickland</u>. 466 U.S. at 693-94.

### 1. Failure to Raise a Weight of Evidence Claim

Petitioner claims that appellate counsel erred by failing to raise a weight of the evidence claim concerning the conspiracy count. "The mere fact that appellate counsel chose to raise issues other than the ones Petitioner now claims he would have preferred does not entitle him to habeas relief. . . . Indeed, an effective appellate attorney must 'examine the record with a view to selecting the most promising issues for review . . . [because a] brief that raises every colorable issue runs the risk of burying good arguments.'" <u>Bullard v. Fischer</u>, No. 02 Civ. 9312 (RWS), 2003 WL 21040179, at *6 (S.D.N.Y. May 8, 2003) (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 752-53, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987 (1983)). <u>See also</u> <u>Jameson v. Coughlin</u>, 22 F.3d 427, 429 (2d Cir. 1994) (attorney's performance is not "outside the wide range of professionally competent assistance" when he does not argue an issue that he determines to be "futile.").

Here, appellate counsel focused on "good arguments," one of which carried the day with respect to the possession counts and substantially reduced Petitioner's sentence. <u>Martin</u>, 81 A.D.3d at 1180-81. This favorable outcome demonstrates the effectiveness of counsel.

Moreover, Petitioner can not show that he was prejudiced by appellate counsel's failure to advance a weight of evidence claim with respect to the surviving conspiracy count. Under New York law, the threshold question facing a court conducting a weight of the evidence review is "whether an acquittal would not have been unreasonable." <u>People v. Danielson</u>, 9 N.Y.3d 342, 348, 880 N.E.2d 1, 5 (2007) (citing <u>People v. Romero</u>, 7 N.Y.3d 633, 636, 826 N.Y.S.2d 163, 859 N.E.2d 902 (2006)). If that threshold is met, the appellate court must then "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and

20

evaluate the strength of such conclusions." Id. at 348.  In performing that review, however, appellate courts are "careful not to substitute themselves for the jury" and consequently accord "[g]reat deference . . . to the fact-finder's opportunity to view the witnesses, hear the testimony and observe demeanor."  People v. Bleakley, 69 N.Y.2d 490, 495, 508 N.E.2d 672 (1987)

Here, Petitioner's conspiracy conviction – as distinguished from the substantive possession convictions which the appellate court found lacking – was amply supported by the testimony of coconspirator Nikolados and by intercepted drug-related communications between Petitioner and kingpin Adam Bloom.  There was no "conflicting testimony," as the defense presented no evidence but relied instead on a reasonable doubt strategy which centered on attacking the credibility of Nikolados and the possible biases of Investigator Young.  Because New York courts defer to the jury on such questions, there is no reasonable probability that Petitioner would have prevailed on a weight of the evidence claim even if such a claim had been raised on appeal.  Failure to do so does not constitute ineffective assistance of appellate counsel.

*2.  Failure to Raise Ineffective Assistance of Trial Counsel*

Next, Petitioner argues that his appellate counsel was ineffective by failing to argue ineffective assistance of trial counsel on various grounds.  Upon analysis, none of the purported attorney lapses identified by Petitioner would have served as a promising issue on appeal.

*i.  Failure to Preserve a Constitutional Speedy Trial Claim*

Petitioner alleges that his trial counsel was ineffective because she failed to interpose a Sixth Amendment speedy trial claim on his behalf.  Even though his trial began on May 13, 2009, just a year after his May 10, 2008 arrest, Petitioner claims that his appellate attorney should have raised this alleged attorney error on appeal.

Constitutional speedy trial claims are assessed in light of the four factors enumerated by

21

the Supreme Court in <u>Barker v. Wingo</u>, 407 U.S. 514, 530 (1972): (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. "No one of these factors, however, is 'either a necessary or sufficient condition to the finding of a deprivation of the right,' and courts must still engage in a sensitive balancing process whereby the conduct of both the prosecution and the defendant are weighed." <u>Rayborn v. Scully</u>, 858 F.2d 84, 89 (2d Cir.1988) (quoting <u>Barker</u>, 407 U.S. at 530); <u>see also</u> <u>United States v. Chen</u>, No. 97 Cr. 763, 1999 WL 194749, at *6 (S.D.N.Y. Apr. 7, 1999). Petitioner has not addressed the <u>Barker</u> factors, and or presented any viable argument that a Sixth Amendment speedy trial claim would have been successful.

The first of the <u>Barker</u> factors, the length of the delay, is in effect a threshold question: "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." <u>Doggett v. United States</u>, 505 U.S. 647, 652 (1992). Although the Supreme Court has suggested that a one-year delay (a threshold Petitioner's claim barely crosses) is sufficient to trigger inquiry under the Sixth Amendment, <u>id.</u> at 652 n.1, this is not a hard-and-fast rule because "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." <u>Barker</u>, 407 U.S. at 531. Here, where Petitioner was charged with conspiracy along with 12 other defendants in a 52-count indictment based on a complex wiretap investigation, a one-year and three-day "delay" in bringing Petitioner to trial falls far short of what would be required to establish a constitutional speedy trial violation. <u>See</u> <u>United States v. McGrath</u>, 622 F.2d 36, 41 (2d Cir. 1980) (24-month delay "considerably shorter than . . . other cases in which no Sixth Amendment violation has been found.")

Even if Petitioner's case met the threshold for a <u>Barker</u> claim, the other factors do not

suggest a Sixth Amendement violation occurred.  As for the "reason" for the delay, much of the delay was due to the complexity of the case, which again involved 13 defendants, 52 counts, a wide-ranging conspiracy, and thousands of wiretap recordings.  Because there was no "deliberate attempt to delay the trial in order to hamper the defense," this factor does not support a violation. Barker, 407 U.S. at 531.  With respect to prejudice, the Barker court explained that prejudice should be assessed in the light of the interests which the speedy trial right was designed to protect:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Barker, 407 U.S. at 532 (footnote omitted).  Here, Petitioner has not suggested that any delay in bringing him to trial prejudiced his defense.

Thus, the record does not suggest any reason why a constitutional speedy trial motion, if pursued by trial counsel, would have had any merit.  Appellate counsel did not err in failing to raised an ineffective assistance of trial counsel claim in this regard.

### ii.   Failure to Object to the Case Proceeding to Trial Without the Trial Court Rendering a Decision on Petitioner's Statutory Speedy Trial Motion

Petitioner contends that appellate counsel was ineffective because he did not assert that trial counsel erred by failing to object to the case proceeding to trial without the trial court rendering a decision on Petitioner's state law statutory speedy trial motion.  This claim is without merit.  Petitioner was arrested and charged on May 10, 2008.  The prosecution answered ready for trial in July 2008, within the six month period required under C.P.L. § 30.30(1)(a).  In his speedy trial motion, Petitioner acknowledged that multiple periods were tolled for various

reasons, including plea negotiations, but argued that those exclusions should not apply to him because he "consistently refused the People's offers[.]" (Dkt. 16.2 at 100-01).  However, New York's Speedy Trial statute provides that periods of time excluded as to one defendant are binding as to codefendants joined for trial.  N.Y. Crim. P. Law § 30.30(4)(d).  Contrary to the implication of Petitioner's argument, New York law does not limit such exclusions to negotiations in which the defendant himself is participating.  See People v. Flores, 750 N.Y.S.2d 741, 743 (Sup. Ct. 2002) (defendant bound by codefendant's undisclosed consent to exclusion to accommodate confidential meetings with prosecutor).

Thus, there was no merit to the statutory Speedy Trial motion filed but then abandoned by trial counsel, and there is therefore no reasonable likelihood that the motion would have been granted if counsel had pressed the issue.  Appellate counsel cannot be faulted for failing to raise an ineffective assistance of trial counsel claim on this basis.

### iii.  Failure to Move to Dismiss the Conspiracy Count on Sufficiency Grounds

Petitioner asserts that appellate counsel should have argued that trial counsel erred by not moving to dismiss the conspiracy count on sufficiency grounds.  As discussed above, however, I have determined that trial counsel *did* move to dismiss the conspiracy count on sufficiency grounds, so there is no basis for an argument that appellate counsel should have raised an ineffectiveness claim premised on trial counsel's *failure* to do.[7]  This claim is without merit.

### iv.  Failure to Assert that the Conspiracy Count was Duplicitous

Petitioner claims that appellate counsel was ineffective for failing to argue that trial counsel was ineffective for not challenging Petitioner's indictment on the grounds that the

---

[7] Petitioner himself (inconsistently) maintains that his trial attorney "in fact properly perserved [sic] his insufficiency of evidence claim." (Dkt. 2 at 5).

conspiracy count was duplicitous.  The underlying claim that the conspiracy count was duplicitous is without merit.

Under New York law, "[e]ach count of an indictment may charge one offense only." N.Y. Crim. Proc. Law § 200.30.  See Schwartz v. Connell, No. 05 Civ. 10305 (RPP), 2006 WL 3549660, at *8 (S.D.N.Y. Dec. 6, 2006); Gray v. Artuz, 931 F. Supp. 1048, 1051 (S.D.N.Y. 1996) ("A count of an indictment is duplicitous under New York law if it charges more than one offense.").  However, "a conspiracy indictment presents unique issues in the duplicity analysis because a single agreement may encompass multiple illegal objects." United States v. Aracri, 968 F.2d 1512, 1518 (2d Cir.1992) (internal quotation marks omitted).  Accordingly, New York has long recognized that "[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for the conspiracy is the crime and that is one, however diverse its objects." People ex rel. Hannon v. Ryan, 34 A.D.2d 393, 400 (4th Dept. 1970) (quotation omitted.)

Here, count one of the indictment charged Petitioner and numerous others with second-degree conspiracy and identified multiple felonies that were the objects of the single conspiracy. This count was not duplicitous.  Thus, trial counsel was not ineffective in failing to raise this meritless claim, and appellate counsel was not remiss in not attacking trial counsel's performance in this regard.

### *v. Failure to Object on Hearsay Grounds to Nikolados' Testimony*

Petitioner contends that appellate counsel erred by not asserting that trial counsel was ineffective for failing to object on hearsay grounds to Nikolados' testimony that Bloom had stated that Petitioner worked for him.

In New York, "it has long been settled that the declarations of one coconspirator made in

25

the course and furtherance of a conspiracy are admissible against all other coconspirators as an exception to the general rule against hearsay." People v. Sanders, 56 N.Y.2d 51, 62, 436 N.E.2d 480 (1982).  Moreover, the Supreme Court has held that the "co-conspirator exception to the hearsay rule is firmly enough rooted in our jurisprudence that . . . a court need not independently inquire into the reliability of such statements." Bourjaily v. United States, 483 U.S. 171, 183 (1987).  Here, as Nikolados' testimony established the existence of a conspiracy involving Petitioner, Bloom, and Nikolados himself, Bloom's out-of-court statements to Nikolados implicating Petitioner were admissible co-conspirator statements under this rule.  Therefore, Petitioner has failed to establish that appellate counsel was ineffective for not raising this meritless claim.

### vi.  Failure to Object on Hearsay Grounds to Investigator Young's Testimony

Petitioner contends that appellate counsel erred by not asserting that trial counsel was ineffective for failing to object on hearsay grounds to Investigator Young's testimony concerning Bloom's post-arrest statements implicating Petitioner.  In pressing this argument, Petitioner ignores the fact that defense counsel *elicited* testimony concerning this exchange during her cross-examination of Investigator Young:

> Q. Now you sat down with Adam Bloom after his arrest and he told you, "Oh, yeah I handed Jasper Martin four ounces of cocaine on March 31st."
>
> A. I didn't go into specific days.  I asked him who he dealt with and how much he gave each person.  He said he dealt with Mr. Martin; A-K-A Boo, as he called it, he gave him anywhere from 50 to 75 grams of cocaine and Mr. Martin is one of the clients who would not pay him in full, up front, but would give him some money.  He had complimented Mr. Martin because he stated that some of the other people he dealt with were late with returning money, Mr. Martin's turnaround was very good."

(T. 463).

26

"It is well-established that courts will not review counsel's conduct of cross-examination 'unless there is no strategic or tactical justification for the course taken.'" Mathieu v. Giambruno, No. 05 Civ. 8098 (JSR) (MHD), 2008 WL 383509, at *18 (S.D.N.Y. Feb. 11, 2008) (citing United States v. Luciano, 158 F.3d 655, 660 (2d Cir.1998)); see also Garcia v. Kuhlmann, 897 F. Supp. 728, 730 (S.D.N.Y.1995) ("The choice of how to conduct cross-examination is a matter of trial strategy, which will not be reviewed by the Court unless counsel failed even to put on a defense, or to perform other basic elements of trial advocacy."). Here, it appears that counsel sought to suggest through her cross-examination that Investigator Young's interpretation of the intercepted telephone conversations was influenced by Bloom's post-arrest statement, a variation of the classic "rush to judgment" defense.[8]  Although that strategy ultimately failed, counsel was not ineffective for pursuing it, and appellate counsel certainly cannot be faulted for failing to assert ineffective assistance of trial counsel on this basis.[9]

### vii. Failure to Introduce Bloom's Statement

Petitioner contends that his appellate counsel was ineffective for not asserting that trial counsel was ineffective for failing to "lay the proper foundation to submit [the] sworn statement of Adam Bloom[.]" (Dkt. 2, p. 3).[10]  However, Petitioner provides no hint as to what type of

---

[8]  Returning to this theme, defense counsel argued on summation that the prosecution's case was "based on assumptions." (T. 587).

[9]  Although Young referred again to Bloom's post-arrest statement implicating Petitioner during the prosecution's re-direct (T. 544), defense counsel, having "opened the door" to the out-of-court statement, cannot be faulted for failing to object.

[10]  The March 20, 2009 statement provides, in pertinent part:

> My name is Adam Bloom.  Today's date is March 20, 2009.  On December 12, 2008, I plead guilty to charges I'm not guilty of.  I never gave cocaine to anybody to sell.  Never sold it to anybody.  I was coerced into taking 12 years, because I would get life and I had

"foundation" would have enabled his attorney to introduce this hearsay and transparently self-serving document as evidence in his defense.

Defense counsel who "exercise[] sound professional discretion" by declining to undertake "plainly frivolous" actions do not thereby violate the Sixth Amendment. United States v. Boothe, 994 F.2d 63, 69 (2d Cir. 1993). Accordingly, appellate counsel was not derelict in failing to assert ineffective assistance of counsel on this basis.

### 3. Failure to Seek Re-Argument

Petitioner claims that appellate counsel erred in not seeking reargument after the Appellate Division found unpreserved Petitioner's legal sufficiency claim with respect to the conspiracy count. Here, the Court need not reach the question of whether appellate counsel's failure to seek reargument was objectively unreasonable because Petitioner has not demonstrated prejudice. See Strickland, 466 U.S. at 693-94. As established above, Petitioner's sufficiency claim regarding the conspiracy count is meritless, as there was sufficient evidence to convict Petitioner of the conspiracy charge. Therefore, this claim provides no basis for habeas relief.

---

no other choice. And I was under the influence of drugs. I had a conversation with Jasper Martin on the phone, it was discussing of Marijuanah, a very small amount to smoke. I never gave cocaine to him. I never gave cocaine to anybody. I put a motion to withdraw my plea on March 18, 2009. I was forced to plead guilty of charges I'm not guilty of.

(Dkt. 16.7, p. 76.)

**D.**     **Ineffective Assistance of Trial Counsel Claims**

 *1.  Exhausted Claims[11]*

  *i. Failure to Object on Hearsay Grounds to Nikolados' Testimony*

Petitioner asserts that counsel erred by not objecting on hearsay grounds to Nikolados' testimony.  As explained above, because Nikolados' testimony fell within the co-conspirator exception to the hearsay rule, trial counsel had no basis to object on hearsay grounds to Nikolados' testimony that Bloom told Nikolados that Petitioner worked for him.  Therefore, Petitioner has failed to establish that trial counsel was ineffective for not raising this meritless claim.

  *ii. Failure to Object on Hearsay Grounds to Investigator Young's Testimony*

Petitioner contends that trial counsel was ineffective for failing to object to Investigator Young's testimony that Bloom acknowledged providing cocaine to Petitioner.  As explained above, defense counsel *elicited* this testimony, and her failure to then object to it did not amount to ineffective assistance of counsel.

 *2. "Deemed Exhausted" But Procedurally Barred Claims*

  *i. Failure to Object on Confrontation Clause Grounds to Nikolados' and Investigator Young's Testimony*

In addition to claiming that trial counsel was ineffective for failing to object on hearsay grounds, Petitioner claims that trial counsel was ineffective for not objecting to Nikolados' and Investigator Young's testimony on Confrontation Clause grounds.  Petitioner failed to exhaust

---

[11] Respondent concedes that Petitioner exhausted these claims by presenting them in a *pro se* § 440.10 motion and then seeking leave to appeal when the motion was denied.  (Dkt. 17, p. 15).  Although the trial court likely could have denied these record-based ineffectiveness claims on the basis of § 440.10(3)(a)(pertaining to issues which could have been raised on direct appeal), it did not do so, so there is no question of procedural bar.

this claim.  Nevertheless, this record-based claim is "deemed exhausted" because it is now procedurally barred under state law.  See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004).  Petitioner cannot again seek leave to appeal those claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled.  See N.Y. Ct. Rules § 500.20(a)(2).  He is also precluded from raising this claim in a collateral proceeding because it could have been raised on direct appeal to the Appellate Division.  See N.Y. Crim. Proc. Law § 440.10(2)(c).  Therefore, his claim must be deemed procedurally barred unless he can satisfy the cause-and-prejudice or fundamental-miscarriage-of-justice exceptions to procedural waiver.  Coleman, 501 U.S. at 749–50 (1990); Fama v. Comm'r of Corr. Serv., 235 F.3d 804, 809 (2d Cir.2000); Acosta v. Giambruno, 326 F.Supp.2d 513, 520 (S.D.N.Y.2004). He fails to do so.

Petitioner does not assert any "cause" for the default of his claim.  A claim of ineffective assistance of appellate counsel may establish cause for a procedural default.  See Edwards v. Carpenter, 529 U.S. 446, 451 (2000).  However, as explained above, Petitioner could not have successfully argued ineffective assistance of appellate counsel as cause for his procedural default of his unexhausted ineffective assistance of trial counsel claims.  As Petitioner has not and cannot establish cause for the procedural default, the Court need not reach the question of prejudice.  See McClesky v. Zant, 499 U.S. 467, 494 (1991) ("Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default.").  Additionally, Petitioner has not established a fundamental miscarriage of justice, such as evidence that he was actually innocent.  See Schlup v. Delo, 513 U.S. 298, 325 (1995).

Accordingly, Petitioner's allegation that his trial counsel was ineffective for failing to object on Confrontation grounds to the testimony of Nikolados and Young is deemed exhausted

but procedurally barred.

### ii. Failure to Argue a Constitutional Speedy Trial Motion

Petitioner claims that trial counsel was ineffective because she did not raise a constitutional speedy trial motion and did not object to the case proceeding without the trial court rendering a decision on Petitioner's statutory speedy trial motion. Petitioner failed to exhaust this claim. Nevertheless, this record-based claim is "deemed exhausted" because it is now procedurally barred under state law. See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004). Petitioner cannot again seek leave to appeal those claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Ct. Rules § 500.20(a)(2). He is also precluded from raising this claim in a collateral proceeding because it could have been raised on direct appeal to the Appellate Division. See N.Y. Crim. Proc. Law § 440.10(2)(c). Therefore, his claim must be deemed procedurally barred unless he can satisfy the cause-and-prejudice or fundamental-miscarriage-of-justice exceptions to procedural waiver. Coleman, 501 U.S. at 749–50 (1990); Fama v. Comm'r of Corr. Serv., 235 F.3d 804, 809 (2d Cir.2000); Acosta v. Giambruno, 326 F.Supp.2d 513, 520 (S.D.N.Y.2004). He fails to do so.

Petitioner does not assert any "cause" for the default of his claim. A claim of ineffective assistance of appellate counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000). However, as explained above, Petitioner could not have successfully argued ineffective assistance of appellate counsel as cause for his procedural default of his unexhausted ineffective assistance of trial counsel claims. As Petitioner has not and cannot establish cause for the procedural default, the Court need not reach the question of prejudice. See McClesky v. Zant, 499 U.S. 467, 494 (1991) ("Attorney error short of ineffective

31

assistance of counsel, however, does not constitute cause and will not excuse a procedural default."). Additionally, Petitioner has not established a fundamental miscarriage of justice, such as evidence that he was actually innocent.  See Schlup v. Delo, 513 U.S. 298, 325 (1995).

Accordingly, Petitioner's claim that trial counsel was ineffective in failing to pursue speedy trial issues is deemed exhausted but procedurally barred.

## IV. CONCLUSION

For the reasons set forth above, I conclude—and respectfully recommend that Your Honor should conclude—that the instant petition for a writ of habeas corpus should be denied in its entirety.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).[12]

Dated: February 18, 2016
       White Plains, New York

Respectfully submitted,

Paul E. Davison, U.S.M.J.

---

[12]     Copies of all unpublished opinions and decisions available only in electronic form cited herein have been mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation.  If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections.  See Fed. R. Civ. P. 6(d).  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Vincent Briccetti at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Vincent Briccetti and not to the undersigned.

A copy of this Report and Recommendation has been mailed to:

Jasper Martin
Inmate # 09-A-4779
Downstate Correctional Facility
Box F, 121 Red Schoolhouse Road
Fishkill, New York 12524-0445